TURNER v. LUER et al. (ALTON BANK-ING & TRUST CO., Intervener).

No. 8713.

Circuit Court of Appeals, Seventh Circuit.

April 23, 1945.

Rehearing Denied June 9, 1945.

A. M. Fitzgerald, of Springfield, Ill., and Richard A. Austin, of St. Louis, Mo., for appellant.

Schaefer O'Neill and J. P. Streuber, both of Alton, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The trial court dismissed, for want of equity, the plaintiff's suit which was brought to establish a trust and require the defendants, as trustees, to account to her for her one-fifth share therein.

Plaintiff and the three individual defendants (her brothers) were the children of August Luer, an elderly, wealthy resident of Alton. A fifth child, a daughter, is dead. Mr. Luer created a trust on February 17, 1930,[1] for the life benefit of himself and wife, with remainders to the children. He announced the trust at a meeting of all members of his family who all read the instrument. In December, 1932, Mr. Luer destroyed this trust instrument and copy, and in January, 1933, the two stocks which had been transferred to the trust, along with a note, were reconveyed by the trustees to him.

Plaintiff's suit is predicated on the theory that the 1930 trust created by her father was irrevocable. If irrevocable, plaintiff argues, it is still in force, and its corpus should be divided as provided in the trust, and not included in August Luer's estate.

On the issue of irrevocability, the trial judge announced orally:

---

[1] Dates of importance in the case are:

March 1929 Luer signed a $30,000 note of Mr. Turner.

Feb. 17, 1930 Trust executed; Mrs. Turner signed note for $56,993 which ran to her father.

Dec. 1932 Trust instrument destroyed by Luer.

Jan. 3, 1933 Corpus of trust reconveyed to Luer.

Aug. 9, 1939 Mrs. Luer died.

Nov. 24, 1941 Helen Luer Petersen died.

Sept. 22, 1942 August Luer died.

Dec. 3, 1942 Inventory of August Luer estate filed.

Feb. 24, 1943 Judgment on $56,993 judgment note for $106,449.21 against Mrs. Turner.

Feb. 26, 1943 Judgment on $30,000 judgment note for $_9,-050 against Mr. Turner.

May 21, 1943 Petition filed in probate to sell assets of August Luer estate. Mrs. Turner asked for continuance.

June 7, 1943 Order of sale of assets, no protest by Mrs. Turner.

Sept. 27, 1943 Instant complaint filed. Plaintiff, a citizen of Missouri.

Sept. 30, 1943 Madison County Circuit Court denied plaintiff's motion to vacate judgments in favor of defendants against estate. No appeal by Mrs. Turner.

"I don't think there is evidence here that the Court would be justified in undertaking to find that this trust instrument was not under any circumstances irrevocable. * * I do not hardly feel I could possibly as a finding of fact here conclude there was any such trust instrument as contended for by the Plaintiff in her complaint. I think her evidence falls short of the degree of proof the Court must have to reconstruct this trust instrument. I think she is not at fault being unable to produce anything, but on the other hand the circumstances all indicate here that the trust was terminated by her agreement. I think the circumstances clearly indicated, I thought they did on the motion for the summary judgment on the documentary proof of what transpired in Probate Court the other day would rather indicate she acquiesced in its termination. It may be such a trust they could not terminate on agreement, but I have no evidence it was such a trust instrument as that."

The plaintiff, her husband, and the secretary of the attorney who drew the trust instrument testified that the trust contained a clause making the trust irrevocable. The brothers testified they did not remember any such clause.[2]

■ Decision turned upon the credibility of these witnesses. There was, we believe, substantial evidence to support the court's finding that plaintiff failed to establish her allegation of irrevocability of the trust.

Hers was a somewhat difficult burden in view of the destruction of all copies of the trust instrument. It is rather hard to believe that one so reliable and upstanding as Mr. Luer would destroy a trust agreement, by tearing it up, were it irrevocable.

The story which the record unfolds is that of a father whose devotion to his children and whose business acumen and integrity were sorely strained by the finan-

---

[2] Mrs. Turner testified:
"He said he wanted us to read the trust and if there was any objection by any of us we should speak then because after he signed it it could never be revoked."

Miss Shearlock, the secretary, testified:
"I don't remember the exact wording but it just stated that the trust estate was irrevocable, could not be amended, and there was a paragraph devoted to that particular phase of the document."

"When he called me at the office he asked me if I remembered writing a trust agreement and I told him I did, and he asked me something about if I remembered any of the provisions or anything of that sort. I said I did not, twelve years is a long time to remember something like that. * *

"That night Mr. Turner called me and asked if I remembered writing a trust agreement for Mr. Luer. I said I had, and he wanted to know whether it was irrevocable and at the time I did not know whether he preferred it to be irrevocable or revocable but I told him it was irrevocable and he said * *.

"No, it came to me when Mr. Turner asked me whether it was revocable or irrevocable. * *"

Mr. William J. Luer (son) testified (after a reading of the clause making the trust irrevocable in another trust, from which the secretary said the Luer trust was drafted):

"No sir, I don't think there was (such a provision)."

"Q. Do you recall your father making any statement that he wanted you to read it carefully because if you had any objection to it it could not be changed after it was executed?

"A. No, sir.

"Q. You would say no such statement was made by your father?

"A. No, sir. * * I don't remember my father making any such statement. We were asked to come down to sign the trust agreement but no such assertion was made.

"Q. You do not recall any provision making the trust irrevocable?

"A. I do not."

Mr. Carl A. Luer (son) testified:
"Q. Would you say he did make such a statement or did not? (that there could be no changes after it was signed).

"A. He did not make such statement.

"Q. Do you recall whether or not there was a provision in there making the trust irrevocable?

"A. No, sir."

Mr. Herman Luer:
"Q. I want to get this straight, did you say there was not a provision in the instrument stating that it was irrevocable, or you don't recall?

"A. I read it and I did not read anything to that effect.

"Q. You say it was not there or you don't recall whether or not it was?

"A. I don't think it was there.

"Q. Well, do you know?

"A. I would say it was not there, if that is the way you want me to say it."

cial crash of '29 and the economic depression which followed and the failure of plaintiff's husband's business venture. There is evidence that the father borrowed $135,000 from his sons to pay the bondholders of his son-in-law's corporation which was adjudged a bankrupt. It was on this note that a judgment has been taken by the sons which has been presented as a claim against the father's estate. This judgment will lessen, if it does not exhaust the assets of the father's estate, a part of which plaintiff might otherwise inherit.

In the suit on the note, plaintiff intervened and moved to vacate the judgment in defendants' favor against the estate. She was unsuccessful, but did not appeal.

In 1929 the father was a cosigner on a $30,000 note of plaintiff's husband. It was a judgment note. It was not paid. On February 24, 1943, judgment was taken by the estate against Mrs. Turner for $106,-449.21 on a $56,993.94 note she executed on the same day the trust was created, and which note had been a part of the corpus of the trust.

The trial court also found that plaintiff had knowledge of the revocation of the trust and acquiesced therein. As one of its findings, it stated:

" * * that plaintiff has failed to establish by the evidence in this case that such action on the part of August Luer was without authority and void, but has by her conduct accepted such revocation of the trust as valid and binding upon all the parties."

As one of its conclusions it said:

"That * * plaintiff is by her conduct estopped from now asserting the existence of a valid trust."

In support of this finding and this conclusion Judge Briggle discusses the evidence of plaintiff's participation in the meetings of the corporations, the stock of which constituted the corpus of the trust. She knew that her brothers did not participate as trustees. The stocks of these companies were listed in the inventory of her father's estate and she made no protest thereto; nor did she protest the sale of such stocks or the report of their sale.

As to her knowledge of the termination of the trust, the court was doubtless influenced by the fact that plaintiff must have learned of said cancellation from her attendance of the stockholders' meetings. It was perhaps equally impressed by the testimony of the vice-president of the local bank who told of a visit of the Turners, after the death of the father, seeking from him some documents the nature of which they were not certain. He called it a "hunting expedition." He enumerated many documents in an attempt to ascertain the nature of the instrument they were seeking and asked if it were a trust, and "They said, no, *that has been cancelled out a long time ago.* Mr. Turner made that statement." "Q. In the presence of Mrs. Turner? A. Yes, sir."

 The recital of the foregoing evidence is merely to show there was substantial evidence to support both findings, either of which necessitated a decree for the defendants.

The judgment is
Affirmed.